IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAJID SAMIEI,<br><br>    Plaintiff,<br><br>v.<br><br>EVANCE, INC.,<br><br>    Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Majid Samiei ("Plaintiff" or "Mr. Samiei"), by and through undersigned counsel, and files his Complaint for Damages against Defendant eVance, Inc. ("Defendant" or "eVance"). Plaintiff respectfully shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages for unlawful discrimination based on race, ethnicity, national origin, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") and unlawful

discrimination based on race and national origin and retaliation in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981, *et. seq.*

3.

This Court is an appropriate venue for all Plaintiff's claims under 28 U.S.C. § 1391(b), because the Defendant resides within the Northern District of Georgia, and all or a substantial majority of the events giving rise to Plaintiff's claims occurred in the judicial district.

## PARTIES

4.

Plaintiff is a male citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

Defendant is a domestic limited liability company licensed to conduct business in this district.

6.

Defendant employed Plaintiff during the relevant time period.

7.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

8.

Defendant is now and, at all times relevant hereto, has been a corporation engaged in an industry affecting commerce. During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII. Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

9.

Plaintiff is a male citizen of the United States of America and a resident of the State of Georgia and at all such times, Plaintiff was an "employee" of Defendant as defined under 42 U.S.C. § 12111(4).

10.

Defendant may be served by delivering a copy of the summons and complaint to its Registered Agent, Patrick Smith, at 950 N. Point Pkwy Ste 400, Alpharetta, GA, 30005.

## ADMINISTRATIVE PROCEDURES

### 11.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on April 3, 2018.

### 12.

The EEOC issued a "Notice of Right to Sue" on September 25, 2020, entitling an action to be commenced within ninety (90) days of receipt of that notice.

### 13.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

### 14.

On January 27, 2014, Plaintiff, a Persian and Iranian man, began working as a staff accountant for Calpian Commerce, later acquired by eVance Processing, Inc. and Defendant eVance, Inc.

### 15.

Plaintiff was hired by Chief Financial Officer Chris Anderson ("Mr. Anderson").

16.

Upon being hired, Plaintiff reported to Patrick Smith ("Smith"), who reported to Mr. Anderson.

17.

While Mr. Anderson supervised Smith, Plaintiff received good performance reviews and pay increases.

18.

In September 2015, an accountant resigned, leaving Plaintiff as the only remaining accountant under Mr. Anderson.

19.

In May 2016, Mr. Anderson resigned, and Smith became Plaintiff's primary supervisor.

20.

Soon after becoming his primary supervisor, Smith began to harass Plaintiff because of his race (Persian) and national origin (Iran).

21.

Over the course of his employment, Smith, using a snide tone, made derogatory comments to the Plaintiff about his ethnicity.

22.

For example, Smith repeatedly asked Plaintiff why he came to America, implying that Plaintiff did not belong in America.

23.

Smith made derogatory comments, including questioning whether Plaintiff belonged in the America, in front of other employees, encouraging them to laugh at Plaintiff along with him.

24.

Plaintiff was offended by these comments and asked Smith to refrain from insulting him.

25.

Rather than stop, Smith laughed in response to Plaintiff's request that Smith stop asking him why he came to America and making inappropriate comments.

26.

Smith then continued to ask Plaintiff the same question, repeatedly and in front of other employees, with the intent of embarrassing and belittling him.

27.

After President Donald Trump was elected, Smith allowed and participated in political conversations in the office.

28.

At the time, Plaintiff was a Green Card holder from a Muslim country, Iran, and was awaiting American citizenship.

29.

In October 2017, Smith informed Plaintiff that he supported President Trump's travel ban for Iranians.

30.

Smith stated on a number of occasions that he supported all of President Trump's decisions.

31.

Smith regularly humiliated Plaintiff in group meetings by correcting his pronunciation of words, cutting him off when he spoke, responding to his ideas dismissively, and excluding him from important manager meetings.

32.

By excluding Plaintiff from important manager meetings, Plaintiff was deprived of critical job-related information.

33.

Plaintiff's co-workers would laugh at Smith's discriminatory behavior and comments without repercussion.

34.

In addition to being harassed, Defendant also discriminated against the Plaintiff by paying him less than other non-Iranian employees.

35.

When Plaintiff was hired as a staff accountant, he was paid $45,000.

36.

On July 21, 2014, Plaintiff received a $5,000 raise.

37.

On September 1, 2015, Plaintiff received a raise of $3,500.

38.

In November 2016, Plaintiff received a job offer from another company, for which Plaintiff relayed to the company.

39.

On December 16, 2016, Plaintiff was promoted to Finance Manager and received a raise, bringing his annual salary to $70,000 from $53,500.

40.

The December 2016 promotion and raise were given to Plaintiff in response to Plaintiff's other job offer.

41.

In May 2017, Jessica Anderson ("Ms. Anderson"), a white American woman, was hired as a financial analyst. This position had fewer responsibilities than a staff accountant, the job Plaintiff was originally hired to perform.

42.

Ms. Anderson was hired with a starting salary of $69,000.

43.

At the time of her hiring, Ms. Anderson did not have an accounting degree, nor any experience in payment processing.

44.

At the time of Ms. Anderson's hiring, Plaintiff held a bachelor's degree in Accountancy from Georgia State University, a master's degree in Accountancy from Mercer University, and was a certified CPA. Plaintiff also had 25 years of experience.

45.

Over her first year of employment, Ms. Anderson had below average performance.

46.

Over her first year of employment, Ms. Anderson required frequent training from Plaintiff on basic and simple accounting tasks.

47.

In March 2018, Ms. Anderson received a 10% raise, bringing her pay to $77,000.

48.

In March 2018, Plaintiff received only a 4% raise, bringing his pay to $78,000.

49.

In early April, Plaintiff reported to Sharon Penn ("Penn"), Human Resources Manager, that he was being discriminated against because of his ethnicity and national origin, and that Ms. Anderson was receiving more favorable treatment, including in both pay and benefits, such as vacation time.

50.

Penn ignored Plaintiff's complaint.

51.

On April 3, 2018, Plaintiff filed a charge of discrimination with the EEOC against Smith.

52.

On or around April 16, 2018, Penn was notified of the EEOC charge.

53.

Penn did not follow up with Plaintiff about how the company planned to investigate his allegations.

54.

On or around April 16, 2018, Ronny Yakov ("Yakov"), CEO of OLB Group, the company that had acquired eVance Processing, Inc., received notification of the EEOC charge.

55.

On or around April 16, 2018, Plaintiff spoke to Yakov about the charge of discrimination he had filed with the EEOC because Smith had been discriminating against him because of his ethnicity.

56.

Yakov told Plaintiff that soon he would be working more closely with OLB Group's CFO, and Smith would no longer be his supervisor.

57.

Human Resources Manager Shannon Penn informed Smith that Plaintiff had filed a charge of discrimination against him with the EEOC.

58.

Immediately after learning about the EEOC filing, Smith told Plaintiff that he would not "get away" with the EEOC filing and that he was just wasting his time.

59.

Smith told Plaintiff that he would not get a pay raise regardless of whether he filed an EEOC charge or a lawsuit.

60.

Smith began excessively scrutinizing Plaintiff's job performance.

61.

Smith began giving Plaintiff unrealistic deadlines to complete tasks.

62.

Smith asked Plaintiff to create and keep a daily log of his activities.

63.

No other employees had to maintain a daily log.

64.

Smith asked Plaintiff to provide him the procedures he used for all of his activities.

65.

Smith asked Plaintiff to train Ms. Anderson on all of Plaintiff's duties.

66.

On May 1, 2018, Smith told Chris Anderson that Plaintiff had filed the EEOC charge of discrimination and that he was going to fire Plaintiff for making false claims against him.

67.

On May 2, 2018, Smith came into Plaintiff's office and asked him to complete a task.

68.

Plaintiff asked Smith for a few more days to complete the task.

69.

Smith said he wanted it at that moment.

70.

Plaintiff told Smith that he didn't have it ready.

71.

Plaintiff then asked Smith about an expense report that he had submitted to Plaintiff. The expense report was incomplete and lacked supporting documentation.

72.

Smith started yelling at Plaintiff, and demanded he leave the building.

73.

Plaintiff requested Yakov be contacted regarding the situation.

74.

This request further enraged Smith, and he demanded that Plaintiff leave the offices and go home.

75.

Plaintiff called Yakov and told him that Patrick told him to go home. Yakov told Plaintiff to go home because he would be in town on Monday and they could speak then.

76.

On May 2, 2018, just three weeks after Plaintiff filed the EEOC charge and within a few days of Smith learning about the filing, Smith terminated Plaintiff, purportedly for gross insubordination.

77.

Smith terminated Plaintiff with Shannon Penn, the Human Resources Manager who had received the EEOC charge, in the room with him.

78.

Smith told Plaintiff that he was terminated because Plaintiff called Yakov instead of leaving immediately.

79.

Plaintiff was not allowed to retrieve his belongings from his office or say goodbye to his co-workers.

80.

After terminating Plaintiff, Smith told Leah Embry, then a manager at eVance, that he had terminated Plaintiff for demanding equal treatment regarding his pay, which is what Plaintiff had alleged in his EEOC charge as the discrimination he suffered.

81.

Defendant had a progressive discipline policy.

82.

Defendant opted to not use any of the alternative discipline methods listed in their Employee Handbook prior to terminating Plaintiff.

83.

At the time of his termination, Plaintiff had not received any disciplinary actions, performance improvement plan, or negative performance review during his employment.

84.

To the contrary, Plaintiff's personnel file included only positive comments from management.

85.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

86.

Others outside the Plaintiff's protected class were treated differently.

## **CLAIMS FOR RELIEF**

## **COUNT I:  RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

87.

Plaintiff re-alleges preceding paragraphs 14-86 as if set forth fully herein.

88.

Defendant's actions in subjecting Plaintiff to ongoing race discrimination constitute unlawful discrimination on the basis of Plaintiff's race (Persian) in violation of Title VII.

89.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

90.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his status as an employee because of his race.

91.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

92.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT II:  NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

93.

Plaintiff re-alleges paragraphs 14-86 as if set forth fully herein.

94.

Defendant's actions in subjecting Plaintiff to ongoing national origin discrimination constitute unlawful discrimination on the basis of Plaintiff's national origin (Iran) in violation of Title VII.

95.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

96.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his status as an employee because of his race.

97.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

98.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT III:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

99.

Plaintiff re-alleges paragraphs 14-86 as if set forth fully herein.

100.

Defendant's actions, as detailed above, in terminating Plaintiff because of his protected activity constitutes unlawful intentional retaliation in violation of Title VII.

101.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

102.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation.

## COUNT IV:  VIOLATION OF 42 U.S.C. § 1981 RACE AND NATIONAL ORIGIN

103.

Plaintiff re-alleges paragraphs 14-86 as if set forth fully herein.

104.

Plaintiff is Persian and Iranian.

105.

Defendant subjected Plaintiff to unlawful discrimination and harassment on the basis of his race (Persian) and vis-à-vis national origin (Iranian).

106.

Plaintiff had an employment agreement with Defendant within the meaning of 42 U.S.C. § 1981, under which, *inter alia*, Plaintiff worked for Defendant, and Defendant compensated Plaintiff for work.

107.

Plaintiff performed his contractual obligations.

108.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race and national origin in violation of 42 U.S.C. § 1981.

109.

The effect of the conduct was to deprive Plaintiff of economic opportunites, and otherwise adversely effect Plaintiff's status as an employee, because of his race and/or national origin.

110.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected his psychological and physical well-being.

111.

As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to his emotional health, and has lost back pay and front pay.

112.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

113.

Defendant chose not to take appropriate remedial steps to prevent or correct the harassment.

**COUNT V:  VIOLATION OF 42 U.S.C. § 1981 RETALIATION**

114.

Plaintiff re-alleges paragraphs 14-86 as if set forth fully herein.

115.

Plaintiff engaged in protected conduct when he complained about race-based and national origin based discrimination.

116.

Defendant subjected Plaintiff to adverse employment actions after Plaintiff engaged in protected conduct.

117.

There was a causal connection between the protected conduct and the adverse action.

118.

As a direct and proximate result of these actions, Plaintiff has suffered damages.

119.

Defendant, therefore, is liable for the damages caused proximately resulting from its retaliation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation, and approval of said acts;

(c)     Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)     Reasonable attorney's fees and expenses of litigation;

(e)        Trial by jury as to all issues;

(f)        Prejudgment interest at the rate allowed by law;

(g)        Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)        Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)        All other relief to which he may be entitled.

Respectfully submitted the 23rd day of December, 2020.

BARRETT & FARAHANY

/s/ *Amanda A. Farahany*
Amanda A. Farahany
Georgia Bar No. 646135

*Attorney for Plaintiff Majid Samiei*

1100 Peachtree Street, Suite 500
Atlanta, GA30309
(404) 214-0120
amanda@justiceatwork.com